**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | | |
|---|---|---|
| **JASON MOORE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 1:23-cv-10825** |
| | § | |
| **NEWREZ LLC d/b/a/ SHELLPOINT** | § | |
| **MORTGAGE SERVICING,** | § | |
| | § | |
| **Defendant.** | § | |

**STATEMENT OF MATERIAL FACTS**
**SUPPORTING MOTION FOR SUMMARY JUDGMENT**

Newrez LLC d/b/a Shellpoint Mortgage Servicing (**Shellpoint**) submits the following statement of material facts of record as to which it contends there is no genuine issue to be tried under local rule 56.1.

1.      Plaintiff Jason Moore owns two properties in Massachusetts: 35 Lindsey Street and 274 ½ Norfolk Street.  (ECF No. 31, am. compl. ¶¶ 1 & 5.)

2.      On October 11, 2019, Mr. Moore refinanced both properties with new mortgages. (*See* EX. A, Moore depo., EX. 7 (Nov. 13 corr. at 2-11) (reflecting the closing disclosures for refinances at 35 Lindsey Street and 274 ½ Norfolk Street).)

3.      Intercontinental Capital Group, Inc. d/b/a Fellowship Home Loans was the lender for both loans and Chicago Title acted as the title company.  (EX. A, Moore depo., EX. 7 (Nov. 13 corr. at 2-3 & 7-8).)

4.      Mr. Moore signed a note and mortgage memorializing the loan for 274 ½ Norfolk. (EX. B-1, note at 3; EX. B-2, mortg. at 12.)

5.      Mortgage paragraphs 3 and 5 address property insurance.  (EX. B-2, mortg. at 5-6.)

6.      Neither mortgage paragraph 3 nor 5 requires the lender to pay property insurance. (EX. B-2, mortg. at 5-6.)

7.      As part of both the 35 Lindsey and 274 ½ Norfolk transactions, Mr. Moore prepaid his next twelve months' insurance.  (EX. A, Moore depo., EX. 7 (Nov. 13 corr. at 3 and 8).)

8.      For 35 Lindsey Street, Chicago Title paid the $2,252.80 insurance premium directly to the MPIUA—Mr. Moore's insurer.   (EX. A, Moore depo., EX. 7 (Nov. 13 corr. at 3) (under section F "prepaids").)

9.      For 274 ½ Norfolk Street, the Chicago Title paid the $1,047.00 premium to Comzer Insurance Agency—Mr. Moore's insurance producer.  (EX. A, Moore depo., EX. 7 (Nov. 13 corr. at 8) (under section F "prepaids").)

10.     Comzer informed the MPIUA that Intercontinental Capital Group needed to be listed on the insurance policy following at origination.  (*See* EX. C, Cardosa depo. at 31:1-33:2 & EX. 4 (Sep. 24 endorsement req. at 3) (showing the producer, Comzer, submitted a request to change the mortgagee around September 2019).)

11.     Intercontinental then transferred servicing of the 274 ½ Norfolk loan to Shellpoint effective November 8, 2019.  (EX. B-3, Nov. 13 corr. at 1; EX. B, decl. ¶ 6.)

12.     Neither Intercontinental nor Comzer informed the MPIUA that Shellpoint would now be servicing the loan.  (*See* EX. C, Cardosa depo., EX. 2 (Dec. 18 corr. at 1 & 3) (listing Comzer as the producer and Intercontinental Capital Group Inc. as the mortgagee on December 18, 2019).)

13.     Intercontinental also informed Shellpoint when the loan transferred that it would not need to renew Mr. Moore's insurance until July 1, 2020.  (Ex. B-4, cmt. hist. at 2 ("we have on file policy renewal was 07-01-2020"); EX. B, decl. ¶ 6.)

14.     Comzer did not pay the MPIUA the funds it received for insurance on 274 ½ Norfolk.  (EX. C, Cardosa depo., EX. 2 (Dec. 18 corr.).)

15.     The MPIUA issued a renewal declaration page to Comzer and a renewal premium invoice to Mr. Moore at the address Comzer provided on December 18, 2019.  (EX. C, Cardosa depo. at 23:31-25:19.)

16.     The MPIUA issued a notice of cancellation to Comzer, Mr. Moore, and International Capital Group on February 10, 2022.  (EX. C, Cardosa depo., EX. 5 (Feb. 10 corr.); EX. C, Cardosa depo., EX. 6 (proof of mailing); EX. C, Cardosa depo. at 33:20-36:22.)

17.     The MPIUA did not send the renewal premium invoice or the notice of cancellation to Shellpoint.  (EX. C, Cardosa depo. at 35:14-23; EX. C, Cardosa depo., EX. 6 (proof of mailing).)

18.     Mr. Moore learned of the insurance lapse first, reaching out to Shellpoint, Chicago Title, and Intercontinental Capital Group in early March 2020.  (EX. A, Moore depo., EX. 8 (March 19 corr. at 5).)

19.     When an Intercontinental Capital Group representative noted Mr. Moore had two mortgage loans, Intercontinental identified the loan with the unpaid insurance as loan number XXXX4994, 35 Lindsey Street, Dorchester, MA 02124.  (EX. A, Moore depo., EX. 8 (March 19 corr. at 5).)

20.     Intercontinental provided the wrong information—the MPIUA actually needed payment for insurance on 274 ½ Norfolk Street, loan number XXXX5596.  (EX. C, Cardosa depo., EX. 5 (Feb. 10 corr.); EX. B-3, Nov. 13 corr. at 1.)

21.     Intercontinental's representative emailed the group again a few days later, this time providing the correct address for the property.  (EX. A, Moore depo., EX. 8 (March 19 corr. at 3).)

22.     Upon seeing the Norfolk address, a different Intercontinental representative realized the insurance should already be paid and emailed Chicago Title to investigate the issue. (EX. A, Moore depo., EX. 8 (March 19 corr. at 3).)

23.     The Intercontinental representative omitted Shellpoint from subsequent emails. (*See* EX. A, Moore depo., EX. 8 (March 19 corr. at 2-3) (listing the March 19 at 10:53 a.m. email recipients as representatives of Chicago Title and Fellowship Loans).)

24.     Chicago Title looked into the missing insurance payment, with a representative asking her colleagues to locate a cashed check for $2,252.80.  (EX. A, Moore depo., EX. 8 (March 19 corr. at 2).)

25.     Chicago Title located the $2,252.80 check a short time later, with an endorsement by the MPIUA.  (EX. A, Moore depo., EX. 8 (March 19 corr. at 1).)

26.     Intercontinental forwarded the $2,252.80 check back to Mr. Moore to show him his insurance was paid.  (EX. A, Moore depo., EX. 6 (March 20 corr. at 1-2).)

27.     The $2,252.80 check was the insurance payment for 35 Lindsey Street, not 274 ½ Norfolk Street.  (EX. A, Moore depo., EX. 7 (Nov. 13 corr. at 3) (under section F "prepaids").)

28.     In late March 2020, Mr. Moore's tenant in 274 ½ Norfolk Street intentionally blocked the main sewer pipe then overfilled the upstairs bathtub, flooding the kitchen below. (EX. A, Moore depo., EX. 10 (May 7 corr. at 1).)

29.     Mr. Moore did not notify the MPIUA of the event—though he did make other claims to the MPIUA for events during the insurance lapse.  (EX. D, VanLiere-O'Donnell depo. at 8:24-9:18 & 11:20-23; EX. D, VanLiere-O'Donnell depo., EX. 11 (Feb. 8 corr. at 14) (reflecting a property damage claim occurring in April 2020 at 274 ½ Norfolk).)

30.     Upon learning of the event, Shellpoint contacted the MPIUA and Comzer to obtain a copy of the insurance cancellation notice.  (Ex. B-4, cmt. hist. at 1-3.)

31.     Both the MPIUA and Comzer refused to provide Shellpoint the requested material as it was not the listed mortgagee on the policy.  (Ex. B-4, cmt. hist. at 2 ("we contacted agent and carrier to obtain cancellation letter they dont want to provide we are not listed on policy").)

32.     Shellpoint maintained its own lender-placed insurance for the property protecting its interest even if Mr. Moore's insurance lapsed.  (Ex. A, Moore depo. at 69:10-12.)

33.     When it learned of the insurance lapse, Shellpoint made a claim on its own insurance to cover the damage.  (Ex. A, Moore depo., EX. 9 (Proctor rep. at 1).)

34.     After inspecting the property on May 15, 2020, the claims adjuster determined Shellpoint's policy provided no coverage.  (Ex. A, Moore depo., EX. 9 (Proctor rep. at 1).)

35.     Mr. Moore complained to the Massachusetts Attorney General regarding the outcome of Shellpoint's claim.  (Ex. A, Moore depo., EX. 9 (Proctor rep. at 2).)

36.     The insurer agreed to reopen the file and retain a new inspector to reinvestigate the claim.  (Ex. A, Moore depo., EX. 9 (Proctor rep. at 2).)

37.     When the new inspector arrived at the agreed date, Mr. Moore refused to allow them entry unless they signed a document he drafted stating they guaranteed he would receive copies of their reports.  (Ex. A, Moore depo., EX. 9 (Proctor rep. at 2); EX. A, Moore depo. at 99:2-9.)

38.     When the inspectors stated they could not sign the document, Mr. Moore denied them entry to the property, preventing them from reinvestigating the claim.  (Ex. A, Moore depo., EX. 9 (Proctor rep. at 2); EX. A, Moore depo. at 99:2-9.)

Dated: February 26, 2024

Respectfully submitted,

Newrez LLC d/b/a Shellpoint Mortgage Servicing

By its attorneys,

*/s/ R. Martin Dungan*
R. Martin Dungan; BBO #711969
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339
Email: martin.dungan@akerman.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2024, I electronically filed the foregoing **STATEMENT OF MATERIAL FACTS SUPPORTING MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all counsel of record, if any.

*/s/ R. Martin Dungan*
R. Martin Dungan