UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-10825-RGS

JASON MOORE

v.

NEWREZ LLC d/b/a SHELLPOINT LOAN SERVICING
and COMREZ INSURANCE AGENCY, LLC

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

July 19, 2024

STEARNS, D.J.

The core dispute in this case is simple enough: who had the responsibility for renewing plaintiff Jason Moore's liability insurance premium on a rental property that he owned? Pointing his finger at his loan servicer, Newrez LLC d/b/a Shellpoint Loan Servicing (Shellpoint), Moore sued Shellpoint in Suffolk Superior Court.[1] Moore alleged that Shellpoint breached the parties' contract (Count I); was negligent (Count II); and violated §§ 2 and 11 of the Massachusetts Unfair Business Practices Act,

---

[1] In February of 2024, Moore amended his Complaint to add his insurance broker, Comzer Insurance Agency, LLC (Comzer), as a defendant. Neither Comzer nor Moore has yet moved for summary judgment on the claims against Comzer, so its possible liability is not at issue here.

Mass. Gen. Laws. ch. 93A (Count III).[2] Shellpoint timely removed the case to this court. At the close of discovery, Shellpoint and Moore filed cross-motions for summary judgment, and the court convened a hearing on the motions on July 17, 2024. The court will deny Moore's motion and allow Shellpoint's motion.

## BACKGROUND

In October of 2019, Moore refinanced mortgage loans on two rental properties he owned in Dorchester, Massachusetts: 35 Lindsey Street and 274½ Norfolk Street (274 Norfolk). Before the closing, Moore prepaid the premium for liability insurance on 274 Norfolk through February 1, 2020. *See* Pl.'s Resps. to Def. Newrez's Statements of Fact Made in Supp. of Newrez's Mot. for Summ. J. (SOF Opp'n), Ex. 4 (Dkt. # 57-4) at 892. A month after the closing, the lender, non-party Intercontinental Capital Group, Inc. d/b/a Fellowship Home Loans (Intercontinental), transferred servicing of the loan to Shellpoint.

The mortgage contract for 274 Norfolk required Moore to make monthly payments into an escrow account, which the note holder was to use to pay his annual insurance premium and taxes. *See* Statement of Materials

---

[2] Moore also included a count seeking injunctive relief. Because injunctive relief is not a stand-alone cause of action in Massachusetts, the court will interpret it as a prayer for relief.

Facts Supporting Mot. for Summ. J. (Shellpoint SOF), Ex. B-2 (Dkt. # 34-2) ¶ 3.  Moore timely made the monthly escrow payments through at least March of 2020.  *See* SOF Opp'n, Ex. 2 (Dkt. # 57-2) at 419.  Shellpoint concedes that, after Intercontinental assigned it the loan, it was obligated to pay Moore's annual insurance premium on the due date.  But, says Shellpoint, when Intercontinental transferred servicing of the loan, it erroneously informed Shellpoint that Moore had prepaid the liability insurance premium through July 1, 2020.  *See* Shellpoint SOF ¶ 13.

Compounding the muddle, no one bothered to tell Moore's insurance carrier, the Massachusetts Property Insurance Underwriters Association (MPIUA), that Shellpoint had taken over servicing of the loan.  Shellpoint thus did not receive the renewal notice that MPIUA sent in December of 2019 to Comzer and Moore stating that the current policy was to expire on February 1, 2020.  *See id.* ¶ 17.  Nor did Shellpoint receive the notice of cancellation that MPIUA sent to Comzer, Intercontinental, and Moore in February of 2020.[3]  *See id.*

---

[3] Moore also did not receive the renewal or cancellation notices because Comzer failed to provide his updated address to MPIUA.  *See* Pl. Jason Moore's Mem. of Law in Opp'n to Def. Newrez LLC's Mot. for Summ. J. & In Supp. of Cross-Mot. for Summ. J. (Opp'n) (Dkt. # 58) at 9 n.3.

3

As fate would have it, a month after Moore's insurance lapsed, a sewage backup flooded 274 Norfolk. Naked of coverage, Moore paid $90,000 out of pocket to restore the property. He also lost a year of rental income while the home was restored to habitability. *See* Opp'n at 10.

## DISCUSSION

The court must grant summary judgment where the movant shows that, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is "'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing version of the truth at trial.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990), quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975). "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" *OneBeacon Am. Ins. Co. v. Com. Union Assur. Co. of Canada*, 684 F.3d 237, 241 (1st Cir. 2012), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Cross-motions for summary judgment "do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties

4

deserves judgment as a matter of law on the facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001).

**Count I:  Breach of Contract**

To prove that Shellpoint breached the mortgage contract, Moore must show that: (1) the parties had a valid contract; (2) Shellpoint breached the contract; and (3) Moore sustained damages because of the breach. *See Brooks v. AIG SunAmerica Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007). Although the parties agree that Shellpoint failed to make the insurance premium payments that it was contractually obligated to make, the court finds that Shellpoint cannot be liable for breach of contract as a matter of law.

Regulation X of the Real Estate Settlement Procedures Act (Reg X) generally allows a loan service transferee to reasonably rely on the transferor's representations. While Reg X requires a loan transferor to transfer all relevant documents and information about the loan "in a form and manner that ensures the accuracy of the information and . . . enables a transferee servicer to comply with the terms of the transferee servicer's obligations to the owner . . . of the mortgage loan," it only requires the transferee to "identify necessary documents or information that may not

5

have been transferred" and request those documents. 12 C.F.R. § 1024.38(b)(4).

As noted, Shellpoint avers that when Intercontinental transferred service of the loan, the boarding information provided by Intercontinental stated that the insurance was prepaid through July 1, 2020. *See* Decl. Supporting Mot. for Summ. J. (Dkt. # 34-2) ¶ 6. In support of this claim, Shellpoint cites to the declaration of Ashleigh Shaw-Pulliam, custodian of records at Shellpoint; the deposition testimony of Shellpoint's 30(b)(6) designee; and recorded comment history "reflecting communications and notices issued on Mr. Moore's loan." *Id.* ¶ 8. Moore sluffs these documents off, arguing that Shaw-Pulliam's declaration is hearsay, and that the relevant comment history was created in March of 2020, after the insurance had lapsed. *See* SOF Opp'n ¶ 13.

The problem is this: there is, at a minimum, "an absence of evidence to support [Moore's] case." *See Celotex*, 477 U.S. at 325. Moore's theory appears to be that Shellpoint had a duty to independently verify the expiration date of the insurance despite having no reason to believe that the boarding information it had been provided by Intercontinental was incorrect. This professed duty has no foundation in insurance or contract law. And, despite having the burden of proof, Moore has identified nothing

6

to contradict Shellpoint's evidence on this point. There are thus no genuine disputes of material fact as to Count I, so the court will enter summary judgment in favor of Shellpoint.

**Count II: Negligence**

"The elements of a negligence claim are that 'the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage.'" *Correa v. Schoeck*, 479 Mass. 686, 693 (2018), quoting *Jupin v. Kask*, 477 Mass. 141, 146 (2006). A plaintiff pursuing a negligence claim generally must allege damages beyond pure economic loss because "purely economic losses are unrecoverable . . . in the absence of personal injury or property damage." *FMR Corp. v. Bos. Edison Co.*, 415 Mass. 393, 395 (1993).

Moore fails to clear several hurdles. First, as a matter of law, Shellpoint owed Moore no duty of care. *See MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 495 (1st Cir. 2013); *Santos v. U.S. Bank Nat'l Ass'n*, 89 Mass. App. Ct. 687, 699-700 (2016). Acknowledging this inevitability, Moore argues that Shellpoint owed him a duty because he is a third-party beneficiary of the contract assigning Shellpoint servicing of his mortgages. This also fails as a matter of law. To recover as a third-party beneficiary, a plaintiff must show

that he was the intended beneficiary of a contract, not merely an incidental one. *Spinner v. Nutt*, 417 Mass. 549, 555 (1994). There is nothing in the contract between Intercontinental and Shellpoint that names Moore as a beneficiary. And even had he been so named, Moore fails to identify any non-economic loss caused by Shellpoint's alleged negligence.[4] Accordingly, summary judgment will be granted in favor of Shellpoint on Count II.

**Count III: Chapter 93A**

To prevail on his Chapter 93A claim, Moore must show "1) that the defendant . . . committed an unfair or deceptive act or practice; . . . 2) a loss of money or property suffered as a result; and 3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014) (footnote omitted). Proof of a Chapter 93A violation requires more than a showing of mere negligence or breach of contract. *See Darviris v. Petros*, 442 Mass. 274, 278 (2004); *Mass. Emps. Ins. Exch. v. Propac-Mass, Inc.*, 420 Mass. 39, 43 (1995).

---

[4] The property damage exception to the economic loss rule is inapplicable because Shellpoint did not cause the damage to 274 Norfolk. Further, Moore's attempt to fit this case under another exception to the economic loss rule that allows insurance agents and brokers that fail to procure insurance to be sued for resulting economic losses is unpersuasive. Shellpoint is not an insurance agent or broker, and it had no duty to secure insurance for Moore.

Moore contends that Shellpoint's "failure to pay or renew Mr. Moore's Hazard Insurance resulting [in] an uninsured major casualty to 274 Norfolk" violated Chapter 93A.  Opp'n at 16.  While Shellpoint perhaps could have acted more diligently in servicing Moore's loan, Shellpoint's conduct was not sufficiently "egregious" to violate Chapter 93A.  *See Stonehill Coll. v. Mass. Comm'n Against Discrimination*, 441 Mass. 549, 582 (2004) (Sosman, J., concurring) (for breach of contract to constitute a Chapter 93A violation, there must be "some egregious circumstance surrounding that breach"); *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 62 (2004) (same, for negligence).[5]  This is particularly true given that (1) the court has dismissed Moore's contract and negligence claims, and (2) as noted, Reg X generally permits a transferee servicer to rely on the representations made to it by a transferor.  The court will thus enter summary judgment in favor of Shellpoint for Count III.

"It is trite, but true, that not every wrong has a remedy."  *Vasapolli v. Rostoff*, 39 F.3d 27, 30 (1st Cir. 1994).  What happened to Moore is

---

[5] Moore finds no help in his claim that Shellpoint's "frivolous and bad faith defenses . . . , in and of themselves, are unfair and deceptive acts." *See* Opp'n at 17.  While litigation conduct may, in rare circumstances, give rise to a Chapter 93A violation, *see Bos. Pilots v. Motor Vessel Midnight Gambler & E. Coast Excursions, Inc.*, 357 F.3d 129, 135 (1st Cir. 2004), Shellpoint's successful defenses were clearly not specious, vexatious, or futile.

9

unfortunate, and he appears to bear little, if any, of the blame.  But based on the undisputed record evidence and the law that binds the court, Shellpoint is not the proper party to bear the blame.

## ORDER

For the foregoing reasons, Moore's motion for summary judgment is DENIED, and Shellpoint's motion for summary judgment is ALLOWED. Shellpoint is hereby dismissed from the case.

        SO ORDERED.

        /s/ Richard G. Stearns  
        UNITED STATES DISTRICT JUDGE